Filed 11/17/23

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES COTA,<br><br>Defendant and Appellant. | F085451<br><br>(Super. Ct. No. BF160857A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Chad A. Louie, Judge.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III., IV., and V. of the Discussion.

# INTRODUCTION

Defendant Charles Cota was convicted in 2016 of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1), with an enhancement for personal infliction of great bodily injury (§ 12022.7); battery with serious bodily injury (§ 243, subd. (d); count 2), with an enhancement for personal use of a deadly weapon (§ 12022, subd. (b)(1)); and child abuse under circumstances likely to cause great bodily harm or death (§ 273a, subd. (a); count 3), with an enhancement for personal infliction of great bodily injury (§ 12022.7). In bifurcated proceedings, the court found defendant had suffered a prior serious felony conviction which also constituted a strike (§§ 667, subds. (a) & (c)-(j), 1170.12, subds. (a)-(e)) and had suffered six prior prison terms within the meaning of section 667.5, former subdivision (b). Defendant was sentenced to a total unstayed determinate term of 25 years as follows: 12 years on count 3 (calculated by doubling the upper term in light of the prior strike), plus an additional three years for the great bodily injury enhancement; a consecutive five-year term for the prior serious felony conviction; and five consecutive one-year terms for the prior prison term enhancements.[2] Sentence on counts 1 and 2 was imposed and stayed. On defendant's direct appeal, this court struck two of the one-year prior prison term enhancements due to those offenses having been reclassified as misdemeanors. We otherwise affirmed. (*People v. Cota*, *supra*, F073303.)

In April 2022, defendant filed a petition for resentencing pursuant to former section 1171 (now renumbered § 1172.7) and former section 1171.1 (now renumbered § 1172.75), as enacted by Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill No. 483). In December 2022, the court conducted a resentencing hearing at which it

---

[1] Undesignated statutory references are to the Penal Code.

[2] The court did not impose an additional one-year term for one of the prior prison term enhancements because the same offense had also given rise to the prior serious felony enhancement. (*People v. Cota* (Nov. 9, 2018, F073303) [nonpub. opn.].)

2.

dismissed the prior prison term enhancements. However, the court declined defendant's request to strike the prior serious felony enhancement. Defendant was resentenced to an aggregate determinate term of 20 years.

On appeal, defendant contends dismissal of the prior serious felony enhancement and the great bodily injury enhancement to count 3 are mandatory pursuant to section 1385, subdivision (c)(2)(B), as added by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81). He additionally contends the court abused its discretion and violated his due process rights by failing to consider his favorable postconviction evidence. Finally, he contends remand is required for the court to exercise its discretion as to which counts to stay pursuant to section 654, as amended by Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill No. 518). To the extent trial counsel failed to raise this issue below, defendant alleges ineffective assistance of counsel. Additionally, on our own motion, we requested supplemental briefing regarding whether the court had jurisdiction to adjudicate defendant's section 1172.75 petition for resentencing.

In the published portion of this opinion, we conclude the court had jurisdiction to resentence defendant and that section 1385, subdivision (c)(2)(B) does not mandate dismissal of any enhancements. In the unpublished portion of this opinion, we reject defendant's remaining contentions. We affirm.

**FACTUAL BACKGROUND**

We previously summarized the facts underlying defendant's offenses as follows:

"At approximately 2:15 a.m. on June 19, 2015, the cashier at [a] gas station . . . in Bakersfield, saw two young . . . males ride up on bicycles. One entered the store, while the other remained outside, talking on his cell phone while he rode in circles around the gas pumps.

"While the cashier assisted the one who came inside, he saw someone running. The person was wearing clothing similar to that worn by defendant, whom the cashier had told to leave the premises about 15 minutes earlier. The young man who had been riding around the gas pumps came in, saying, "he got me, he got me," then lay down in the doorway.

3.

The cashier called 911 and put pressure on the young man's back, which was bleeding.

"Bakersfield Police Officer Hensley responded to the gas station. Upon arrival, he observed Stephen B. lying in the doorway of the business. Stephen had an approximately one-inch laceration to his lower middle back and a small laceration to his left elbow, both of which were closed by staples at the hospital.

"In viewing the gas station's surveillance footage at trial, the manager of the gas station recognized the assailant as defendant. Defendant was frequently at the station, asking for money and alcohol. When he was seen at the gas station a few days after the stabbing, the manager called the police." (*People v. Cota*, *supra*, F073303, fns. omitted.)

## PROCEEDINGS ON THE PETITION

On April 19, 2022, defendant, in propria persona, filed his petition for resentencing pursuant to Senate Bill No. 483. With the petition, he included a letter stating he had realized he needed to change his life and had enrolled in self-help classes in prison, and he apologized to those affected by his behavior and criminal offenses. He included with his letter various documents reflecting his participation in numerous prison groups and classes.

At some point, counsel was appointed for defendant. The parties appeared before the court on May 19, 2022, and the matter was continued. By June 16, 2022, the Department of Corrections and Rehabilitation had included defendant on a list of persons identified as potentially eligible for resentencing pursuant to Senate Bill No. 483 and had made this list available to the trial court through a secure file transfer portal. The parties appeared again on July 14, 2022, and it appears the matter was again continued.[3]

---

[3] The minute order for the July 14, 2022 appearance states arguments were presented and evidence submitted to the court for ruling, and the matter was taken under submission. However, the reporter's transcript for that date reflects only that the following statement was made by the court, "Same as Barboza, with the same scheduling dates."

On November 17, 2022, counsel for defendant filed a "Motion for Hearing on Resentencing and Sentencing Statement." (Some capitalization omitted.) Therein, defendant argued the prior prison term enhancements were legally invalid and must be dismissed. He further argued he was entitled to a new sentencing hearing, at which the court was required to apply Senate Bill No. 81, as well as amendments to section 1170, subdivision (b)(1) mandating imposition of a middle-term sentence unless certain requirements are met. On this basis, he argued the court should resentence him on count 3 to the middle term of four years and should strike the prior serious felony enhancement. Lastly, he argued the court should consider his record of rehabilitation while incarcerated in determining the appropriate sentence. This record included defendant's participation in self-help groups, 12-step recovery programs, anger management, and other programs and classes. Defendant once again included documents reflecting his participation in numerous prison groups and classes.

The matter was heard on December 13, 2022. At the resentencing hearing, defense counsel clarified that defendant was not asking the court to strike the prior strike finding, but to strike the prior serious felony conviction and to dismiss the prior prison term enhancements. Counsel argued, "[H]e's just done so well in prison not getting in any trouble, doing all his classes he's supposed to. His age is 62 makes him much less unlikely to commit any new crimes. So I think that taking that extra 5 years off is appropriate." The prosecutor argued that striking the prior serious felony conviction was inappropriate in light of the seriousness of the underlying charges, as well as the great bodily injury and weapon use enhancements that were proven. When asked about additional facts regarding the case, defense counsel stated defendant was intoxicated at the time of the offense and had no recollection of it.

The court noted multiple mitigating circumstances listed in section 1385, subdivision (c) were present, including that multiple enhancements were alleged and that application of an enhancement could result in a sentence of over 20 years. Thus, the

court identified the question before it as whether striking the prior serious felony enhancement would endanger public safety. On that point, the prosecutor noted that the offenses occurred recently, in 2015, and "it is not as if we're talking about something that the defendant did way back in his youth, and now he's matured and a different man." Defense counsel pointed out that being under the influence had been a problem that defendant was trying to overcome through his prison programming.

The court explained:

> "When I look at the defendant's criminal history in the probation report, which goes all the way back to 1980, he has repeated numerous violations of the law convictions going all the way back to 1980. Theft related offenses, crimes of violence, being under the influence of a control[led] substance, and there are crimes of violence, although many of them are misdemeanors, they go all the way back to 1982 with resisting arrest. There is an assault in 1992. Assault with deadly weapon misdemeanor in [19]93. A [section] 69 in [19]94. Another resisting arrest in [19]95. There is a criminal threat in 2000. Another resisting arrest in 2002. There is a battery in [20]06. Another battery in [20]09. There is the strike from 2011 where the defendant received a two-year prison commitment for assault with a deadly weapon. He is paroled in 2012, and then in 2015 picks up this case . . . . [¶] . . . [¶]

> ". . . So . . . within [three] years after being paroled on a [section] 245[, subdivision] (a)(1), that's a strike prior, he picks up another case that involves great bodily injury, stabbing a minor, a 16-year-old, in public with a knife causing [great bodily injury]. I think with that criminal history, . . . the defendant's prior strike in the . . . close time period between his first strike with assault with a deadly weapon, and then this strike where he assaulted a juvenile with a knife causing [great bodily injury], I think the defendant would endanger the public safety. I believe that there is a likelihood that the dismissal of the five-year enhancement would result in physical injury or other serious danger to others . . . if his sentence is reduced by that additional [five] years."

On that basis, the court struck the prior prison term enhancements but denied the request to strike the prior serious felony enhancement. The court resentenced defendant to an aggregate term of 20 years. The court once again sentenced defendant on count 3 to a 12-year term, plus an additional three years for the great bodily injury enhancement and

an additional five years for the prior serious felony enhancement.  Sentence on counts 1 and 2 was imposed and stayed pursuant to section 654.

## DISCUSSION

### I. THE COURT HAD JURISDICTION TO RESENTENCE DEFENDANT

We requested supplemental briefing on the question of whether the trial court had jurisdiction to adjudicate defendant's request for resentencing inasmuch as section 1172.75 does not expressly provide for a petition or a motion process.  Defendant contends the court's resentencing jurisdiction was triggered by the Department of Corrections and Rehabilitation, which was required to submit information regarding defendant's resentencing eligibility to the trial court by July 1, 2022,[4] months before the court resentenced defendant.  Respondent contends the court had no jurisdiction to consider a resentencing request brought by defendant and the resulting order is therefore void.  For reasons we explain, we conclude the court had jurisdiction to resentence defendant pursuant to section 1172.75.

#### A. Subject Matter Jurisdiction

"Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way."  (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035.)  Thus, " ' "[t]he principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it." ' "  (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 324.)  "By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter."  (*Dial 800 v. Fesbinder* (2004) 118

---

[4] At the time defendant filed his supplemental brief, records had not yet been filed in this court to establish the Department of Corrections and Rehabilitation complied with this deadline.  However, a subsequently filed augmented confidential clerk's transcript establishes the Department of Corrections and Rehabilitation identified defendant as potentially eligible for resentencing prior to this deadline.

7.

Cal.App.4th 32, 42.)  In other words, " 'in the absence of subject matter jurisdiction, a trial court has no power "to hear or determine [the] case." ' " (*Barry v. State Bar of California*, at p. 324.)  Absent factual or evidentiary disputes, our review for subject matter jurisdiction is de novo.  (*Dial 800 v. Fesbinder*, at p. 42.)

In general, " 'once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence.' " (*People v. King* (2022) 77 Cal.App.5th 629, 634 (*King*).)  However, there are many important exceptions to this general rule.  (See, e.g., §§ 1170.18, 1170.126, 1172.1, 1172.6; accord, *King*, at p. 637.)  Although the "unauthorized sentence" doctrine has sometimes been described as one such exception (see *King*, at p. 634), our Supreme Court has recently clarified that it is not.  (*In re G.C.* (2020) 8 Cal.5th 1119, 1129 (*G.C.*).)  The unauthorized sentence doctrine is an exception to the rules of waiver and forfeiture and provides that an unauthorized sentence may be corrected "at any time, even after a judgment of conviction has become final, and even if the judgment has already been affirmed on appeal."[5]  (*King*, at p. 635.)  However, "to invoke this rule the court must have jurisdiction over the judgment."  (*G.C.*, at p. 1130.)

Thus, in *G.C.*, our Supreme Court held that the unauthorized sentence rule did not permit a juvenile to challenge the juvenile court's failure to designate a so-called "wobbler" offense as either a misdemeanor or felony after expiration of the time to appeal the original disposition order.  (*G.C.*, *supra*, 8 Cal.5th at pp. 1122–1123.) Similarly, in *King*, the Court of Appeal held the trial court lacked jurisdiction to correct

---

**5** "[A]n unauthorized sentence or one in excess of jurisdiction is a sentence that 'could not lawfully be imposed under any circumstance in the particular case.' [Citation.]  The appellate court may intervene in the first instance because these errors 'present[] "pure questions of law" [citation], and [are] " 'clear and correctable' independent of any factual issues presented by the record at sentencing" ' and without 'remanding for further findings.' " (*G.C.*, *supra*, 8 Cal.5th at p. 1130.)

an unauthorized sentence for a six-year term[6] decades after the judgment became final. (*King*, *supra*, 77 Cal.App.5th at p. 633.) The *King* court further opined that "a freestanding motion challenging an incarcerated defendant's sentence is not a proper procedural mechanism to seek relief." (*King*, *supra*, 77 Cal.App.5th at p. 640.) Rather, the court explained: "A motion is not an independent remedy, but must be attached to some ongoing action. [Citation.] Thus, a defendant who wishes to challenge a sentence as unlawful after the defendant's conviction is final and after the defendant has begun serving the sentence must do more than simply file a motion in the trial court making an allegation that the sentence is legally infirm." (*Ibid.*)

### B. Section 1172.75 Procedure

Senate Bill No. 483 added former section 1171.1, now renumbered section 1172.75, which provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a).) Senate Bill No. 483 also provides a process for recall of sentences rendered invalid by Senate Bill No. 483 and resentencing of affected defendants. (§ 1172.75, subd. (c).)

The resentencing process begins with corrections officials: "The Secretary of the Department of Corrections and Rehabilitation and the county correctional administrator of each county shall identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and shall provide the name of each person, along with the person's date of birth and the relevant case number or docket number, to the sentencing court that imposed the enhancement." (§ 1172.75, subd. (b).) The Department of Corrections and Rehabilitation was to provide this

---

[6] The authorized sentencing triad for the relevant offense was five, seven, or nine years. (*King*, *supra*, 77 Cal.App.5th at p. 633.)

information to the trial courts on a staggered timeline, with the last of such identifications occurring by July 1, 2022.  (§ 1172.75, subd. (b)(2).)

Receipt of information from corrections officials regarding a defendant's resentencing eligibility triggers review by the trial court:  "Upon receiving the information described in subdivision (b), the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a).  If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)  The review and resentencing process also is conducted on a staggered timeline, and all eligible individuals are to be resentenced by December 31, 2023.  (§ 1172.75, subd. (c)(1)-(2).)

### C.      Subject Matter Jurisdiction Under Section 1172.75

As stated, a question has arisen as to whether section 1172.75 grants the trial court subject matter jurisdiction over a motion, brought by a defendant, for resentencing pursuant to section 1172.75.  A handful of cases have examined this question.  We review them in turn.

In *People v. Burgess* (2022) 86 Cal.App.5th 375 (*Burgess*), the defendant filed a motion for resentencing pursuant to section 1172.75, which the trial court denied on the ground section 1172.75 does not permit a defendant to seek such relief on his or her own motion.  (*Burgess*, at pp. 378–379.)  Relying on *King*, *supra*, 77 Cal.App.5th 629, the Court of Appeal concluded the trial court lacked jurisdiction to adjudicate the motion for resentencing.[7]  The court noted that the defendant's judgment had been final for many years and suggested that his motion did not fall within any exceptions to the general rule

---

[7] As a result, the appellate court also concluded it lacked jurisdiction to consider the appeal of the trial court's order denying the petition for resentencing.  (*Burgess*, *supra*, 86 Cal.App.5th at p. 381.)  Here, however, there is no question that the judgment resulting from the trial court's resentencing of defendant is appealable.

that a trial court does not have jurisdiction to modify a sentence once the judgment is final. (*Burgess*, at pp. 381–382.) Rather, the court suggested, the motion was merely an improper " 'freestanding motion' " unattached to any ongoing action. (*Id.* at p. 381; see *id.* at p. 382.) The court further noted that, in crafting section 1172.75, the Legislature had "provided an express system for the orderly implementation of relief for affected defendants to receive the benefit of the amended law in a timely manner," which system was "only triggered by receipt of the necessary information from the [Department of Corrections and Rehabilitation] Secretary or a county correctional administrator, not by any individual defendant." (*Burgess*, at p. 384.)

In *People v. Escobedo* (2023) 95 Cal.App.5th 440, two defendants similarly appealed from trial court orders denying their petitions to strike prior prison term enhancements pursuant to section 1172.75. (*Escobedo*, at pp. 444, 446–447.) The People had opposed the petitions on the ground the defendants were not serving eligible sentences that included prior prison term enhancements, but rather separate sentences for felonies committed while in prison. (*Id.* at p. 447.) Relying on *Burgess*, the *Escobedo* court held the trial court lacked jurisdiction to adjudicate the petitions, as there was no " 'ongoing action' " to which the petitions could attach. (*Id.* at p. 448.) Of particular relevance to the instant appeal, the court rejected the defendants' claim "that they were authorized to file a resentencing petition because they were 'on the CDCR list of eligible inmates submitted to the Superior Court' pursuant to section 1172.75, subdivision (b)(1)." (*Ibid.*) The court noted that no " ' "specific statutory avenues" ' " permitted the defendants to petition for relief pursuant to section 1172.75, and reiterated that the trial court lacked jurisdiction over the petitions. (*Escobedo*, at p. 448.)

Lastly, in *People v. Coddington* (2023) 96 Cal.App.5th 562, 567, the defendant filed a motion for resentencing pursuant to section 1172.75. The trial court granted the motion and vacated a prior prison term enhancement but did not further reduce the defendant's prison term. On appeal, the defendant argued he was entitled to a full

11.

resentencing; the Court of Appeal agreed and remanded for further proceedings. (*Coddington*, at pp. 565, 572.) The court noted that the Attorney General had initially questioned whether the trial court had authority to provide relief under the process described in section 1172.75 but later withdrew this argument. When withdrawing the argument, the Attorney General noted the Department of Corrections and Rehabilitation had identified at least some eligible defendants by way of a list of names, and that resentencing in some cases was based on that list. The court noted that the record in the defendant's case also "suggest[ed] at least some [Department of Corrections and Rehabilitation] involvement in the process." (*Coddington*, at p. 567, fn. 4.) Although the Court of Appeal did not further address the jurisdictional issue, its holding necessarily suggests it concluded the lower court had jurisdiction to resentence the defendant.

### D. Analysis

We conclude the trial court had jurisdiction to resentence defendant.

We begin by acknowledging that section 1172.75 does not authorize a defendant to seek resentencing on his or her own motion or petition. Rather the process is triggered by the Department of Corrections and Rehabilitation identifying a defendant as a person serving a sentence that includes a prior prison term enhancement. (See § 1172.75, subd. (a).)

Here, defendant filed an unauthorized motion for resentencing. The motion was procedurally improper, and the trial court could have denied it on that basis. However, the court did not do so. Rather, the court took no immediate action on defendant's motion. Eventually, during the pendency of the motion, the Department of Corrections and Rehabilitation identified defendant as an individual potentially eligible for resentencing. (See § 1172.75, subd. (a).)

We conclude that, when the Department of Corrections and Rehabilitation provided this identification to the trial court, it triggered the trial court's review and resentencing obligations under section 1172.75, subdivision (b) thereby placing the

12.

matter within a statutorily authorized exception to the general rule that a trial court has no jurisdiction to modify a final judgment. (See *King*, *supra*, 77 Cal.App.5th at p. 637 [describing other statutory exceptions to this general rule].) Once the trial court received that identification information from the Department of Corrections and Rehabilitation, it had authority over the matter and was statutorily authorized to act. (See *Barry v. State Bar of California*, *supra*, 2 Cal.5th at p. 324; *Greener v. Workers' Comp. Appeals Bd.*, *supra*, 6 Cal.4th at p. 1035.)

Our conclusion is not altered by the filing of a procedurally unauthorized motion. We do not see such a filing as depriving the trial court of the jurisdiction afforded to it by statute to resentence a defendant as mandated by section 1172.75. Although this case is distinguishable from *Burgess* and *Escobedo* because the trial court resentenced defendant, we nevertheless disagree with *Escobedo* to the extent that case suggests that a court lacks jurisdiction to resentence a defendant who has been identified by the Department of Corrections and Rehabilitation as eligible for resentencing pursuant to section 1172.75 simply because that defendant also has filed a motion for such relief. (*Escobedo*, *supra*, 95 Cal.App.5th at p. 448.) While such a motion is not authorized by statute and properly could be denied on that basis, the motion does not deprive the court of the jurisdiction otherwise afforded to it. Trial courts have "substantial discretion in the conduct of judicial business," which includes the inherent power to control the litigation before them. (*People v. Rodriguez* (2016) 1 Cal.5th 676, 682.) " ' "That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice." ' " (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351.) "[O]ne important element of a court's inherent judicial authority in this regard is 'the power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' " (*People v. Engram* (2010) 50 Cal.4th 1131, 1146.) Thus, a court has latitude to adopt a suitable procedure for the exercise of its jurisdiction when presented with

information from the Department of Corrections and Rehabilitation triggering the review and resentencing process under section 1172.75, subdivision (b).

## II. DISMISSAL OF FIVE-YEAR PRIOR SERIOUS FELONY ENHANCEMENT

Defendant contends dismissal of the prior serious felony enhancement is mandatory pursuant to section 1385, subdivision (c)(2)(B), as added by Senate Bill No. 81. We disagree that section 1385, subdivision (c)(2)(B) mandates dismissal of any enhancement.

### A. Applicable Law

At the time of defendant's original sentencing, the court was prohibited from striking the prior serious felony enhancement. (*People v. Cepeda* (2021) 70 Cal.App.5th 456, 461; *People v. Reneaux* (2020) 50 Cal.App.5th 852, 875.) Subsequently Senate Bill No. 1393 (2017–2018 Reg. Sess.) removed this prohibition. (Stats. 2018, ch. 1013, §§ 1, 2.) Additionally, subsequent to the original sentencing, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b) to allow for the imposition of one-year prior prison term enhancements only for specified sexually violent offenses.[8] (Stats. 2019, ch. 590, § 1.) As previously stated, section 1172.75 provides a process for recall of sentences involving a now-invalid prior prison term enhancement and resentencing of affected defendants. (§ 1172.75, subd. (c).)

In resentencing a defendant pursuant to section 1172.75, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) In addition, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated,

---

[8] It is undisputed that defendant's prior prison terms did not arise from qualifying sexually violent offenses.

evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

In addition to the foregoing, Senate Bill No. 81 and Assembly Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill No. 200) respectively added, and later amended, section 1385, subdivision (c), which now provides in relevant part as follows:

> "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] . . . [¶]

> "(B) Multiple enhancements are alleged in a single case. *In this instance, all enhancements beyond a single enhancement shall be dismissed.*

> "(C) The application of an enhancement could result in a sentence of over 20 years. *In this instance, the enhancement shall be dismissed.*" (Italics added.)

**B.      Analysis**

Defendant contends that the phrase "shall be dismissed" in section 1385, subdivision (c)(2)(B) is mandatory, and therefore requires dismissal of all enhancements beyond a single enhancement. As defendant acknowledges, this argument has been rejected by every court that has considered it. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239–241, rev. granted Apr. 19, 2023, S278786 (*Anderson*); *People v. Walker* (2022) 86 Cal.App.5th 386, 396, 397, rev. granted Mar. 22, 2023, S278309

(*Walker*); see *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297 (*Mendoza*) [addressing similar language in § 1385, subd. (c)(2)(C)]; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15–21 (*Lipscomb*) [same].) We agree with those courts that have held section 1385, subdivision (c)(2)(B) does not mandate dismissal of all enhancements beyond a single enhancement.

The meaning of the phrase "shall be dismissed" in section 1385, subdivision (c)(2)(B) is a question of statutory interpretation. "The proper interpretation of a statute is a question of law we review de novo. [Citations.] ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " ' [Citation.] ' "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.)

As the court in *Anderson* aptly explained:

> "If we were to read section 1385, subdivision (c)(2)(B) and (C), in isolation, then [the defendant's] argument would appear correct—use of the term 'shall' in a statute is generally mandatory, not permissive. However, 'we are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation; instead, we are required to consider where it fits into the " ' "context of the statute as a whole." ' " ' [Citation.] Here, the statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.) In other words, the dismissal of the enhancement is conditioned on

16.

a court's finding dismissal is in the interest of justice.  The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety.  (*Id.*, subd. (c)(2).)  This language, taken together, explicitly and unambiguously establishes:  the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal.[9]

"It is within these boundaries that section 1385 states the court 'shall' dismiss all but one enhancement and/or enhancements resulting in a sentence of more than 20 years.  The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety.  As our colleagues in Division Two [of the Second Appellate District] recently stated when reaching the same conclusion, if we were to read subdivision (c)(2)(B) and (C) as mandatory, then the existence of those factors 'would not "weigh greatly" in favor of dismissal—it would weigh *dispositively*.'  [Citation.]  In addition, '[t]hat construction would also require us to accept that our Legislature . . . opted to embed that mandate as an addendum to one of nine mitigating factors to be given great weight in the context of a trial court's discretionary decision whether to dismiss.  In other words, if our Legislature was trying to implement a rule of mandatory and automatic dismissal, it picked a very circuitous way to do so.' " (*Anderson*, *supra*, 88 Cal.App.5th at pp. 239–240, rev. granted; accord, *Lipscomb*, *supra*, 87 Cal.App.5th at p. 18 [§ 1385, subd. (c)(2)(C) sets forth a mitigating circumstance for the court to consider in the exercise of its discretion, but which does not apply at all where the court finds that striking the enhancement would endanger public safety].)

---

**9** In *Walker*, the court concluded that section 1385, subdivision (c) as a whole "places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety."  (*Walker*, *supra*, 86 Cal.App.5th at pp. 399–400, rev. granted.)  Our Supreme Court granted review in *Walker* to determine whether section 1385, subdivision (c) "create[s] a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety."  (*People v. Walker* (Mar. 22, 2023, S278309) [order].)  The issue pending before our Supreme Court is not presented in the instant case.

Moreover, interpreting section 1385, subdivision (c)(2)(B) as mandatory would give "no effect to the clause 'unless the court finds that dismissal of the enhancement would endanger public safety.' " (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.) Additionally, defendant's interpretation of the statute would require a court to dismiss an enhancement beyond a single enhancement, even when doing so would endanger public safety. (See *ibid.*) Canons of statutory interpretation require us to reject this interpretation, inasmuch as it would render portions of the statute surplusage and would lead to an absurd result. (*Ibid.*)

Based on the foregoing, we conclude the plain language of the statute as a whole presents no ambiguity. The phrase "shall be dismissed," as used in section 1385, subdivision (c)(2)(B) is not mandatory and does not require dismissal of any enhancement when doing so would endanger public safety.

Although the plain language is dispositive, the legislative history behind Senate Bill No. 81 also supports a conclusion that section 1385, subdivision (c)(2)(B) does not mandate dismissal in all circumstances. As *Anderson* once again aptly noted,

> "The initial drafts of the bill stated, 'There shall be a presumption that it is in the furtherance of justice to dismiss an enhancement upon a finding that any of the circumstances in subparagraphs (A) to (I), inclusive, are true. This presumption shall only be overcome by a showing of clear and convincing evidence that dismissal of the enhancement would endanger public safety.' (Sen. Amend. to Sen. Bill No. 81 (2021–2022 Reg. Sess.) Apr. 27, 2021.) However, the Assembly removed the presumption requiring clear and convincing evidence to overcome, replacing it with the more flexible discretionary language that now appears in section 1385, subdivision (c)(2). (See Assem. Amend. to Senate Bill No. 81 (2021–2022 Reg. Sess.) Aug. 30, 2021.) Shortly thereafter, in a letter to the Secretary of the Senate that was placed by unanimous consent in the Senate Journal, the author of Senate Bill [No.] 81 stated, 'I respectfully request the following letter be printed in the Senate Daily Journal expressing our intent with respect to this measure: [¶] . . . [¶] [A]mendments taken on Aug. 30, 2021 remove the presumption that a judge must rule to dismiss a sentence enhancement if certain circumstances are present, and instead replace[] that presumption with a "great weight" standard where these circumstances are

18.

present. The retention of the word "shall" in Penal Code § 1385(c)(3)(B) and (C)[10] should not be read as a retention of the previous presumption language—the judge's discretion is preserved.' (Sen. Nancy Skinner, letter to Secretary of the Sen. (Sept. 10, 2021) 121 Sen. J. (2021–2022 Reg. Sess.) p. 2638.)

"Thus, not only did the Legislature remove the presumption in favor of dismissal, instead explicitly stating the court had discretion to dismiss enhancements, but also the author of Senate Bill [No.] 81 anticipated the precise argument [the defendant] raises—that the word 'shall' in section 1385, subsection (c)(2)(B) and (C), could be misconstrued as a mandate to automatically dismiss applicable enhancements. The author's unambiguous rejection of this interpretation, placed in the official record with the unanimous consent of her colleagues, supports our conclusion that a trial court is not required to dismiss all but one enhancement or an enhancement that could result in a sentence of more than 20 years, but rather that the trial court has discretion in deciding whether to do so.[11]" (*Anderson*, *supra*, 88 Cal.App.5th at pp. 240–241, rev. granted.)

We acknowledge there is debate as to whether Senator Skinner's September 10, 2021 letter properly may be considered part of the statute's legislative history. (See *Walker*, *supra*, 86 Cal.App.5th at p. 400, rev. granted [declining to afford weight to the letter because it reflects "the view of a single legislator rather than the legislative body that enacted the statute"]; but see *Anderson*, *supra*, 88 Cal.App.5th at p. 241, fn. 9, rev. granted; but see also *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [deeming

---

**10** "The version of section 1385 effective January 1, 2022 included mitigating circumstances (A) through (I) within subdivision (c)(3). (Stats. 2021, ch. 721, § 1.) Effective June 30, 2022 the mitigating circumstances are listed in subdivision (c)(2). (Stats. 2022, ch. 58, § 15.)"

**11** "We recognize that statements by individual legislators may not be entitled to great weight in determining legislative intent. (See *People v. Ramos* (1996) 50 Cal.App.4th 810, 821.) 'A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. [Citations.] The statement of an individual legislator has also been accepted when it gave some indication of arguments made to the Legislature and was printed upon motion of the Legislature as a "letter of legislative intent." ' (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700.)"

relevant a letter published upon a "motion to print" rather than a "motion of legislative intent"].) Even without the letter, however, the evolution of the statute confirms that the Legislature always intended for the court to maintain discretion to impose an enhancement upon a finding that dismissal would endanger public safety. (See *Lipscomb*, *supra*, 87 Cal.App.5th at p. 19.)

Nonetheless, defendant contends that legislation subsequent to Senate Bill No. 81 confirms the Legislature intended the phrase "shall be dismissed" to be mandatory. He points to Assembly Bill No. 200, a public safety omnibus bill that took effect six months after Senate Bill No. 81's effective date, and which did not alter the "shall be dismissed" language of section 1385, subdivision (c)(2)(B). (Stats. 2022, ch. 58, § 15.) Because Assembly Bill No. 200 left the "shall be dismissed" language intact, defendant contends the Legislature must have meant for this phrase to be mandatory. However, this argument merely assumes what it attempts to prove. Moreover, the Legislature referred to the changes to section 1385 made by Assembly Bill No. 200 as "technical, non-substantive changes." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill. No. 200, as amended June 26, 2022, p. 3, par. (10)(f).) This history does not reflect any legislative intent with regard to the phrase "shall be dismissed."

Defendant also points us to Assembly Bill No. 931 (2021–2022 Reg. Sess.) (Assembly Bill No. 931), a bill which the Legislature did not pass. Assembly Bill No. 931 would have amended section 1385 to "remove the requirement to dismiss enhancements" under section 1385, subdivision (c)(2)(B) and (C). (Assem. Bill No. 931, as amended June 6, 2022.) It would have effectuated this change in part by removing from section 1385, subdivision (c)(2)(B) the phrase, "In this instance, all enhancements beyond a single enhancement shall be dismissed." (Assem. Bill No. 931, as amended June 6, 2022.) As defendant points out, the author of Senate Bill No. 81 was one of the senators who voted against Assembly Bill No. 931, leading to its demise. However, we reject defendant's contention that this suggests the author of Senate Bill No. 81 or the

20.

Legislature as a whole intended dismissal under section 1385, subdivision (c)(2)(B) to be mandatory. Rather, a bill analysis by the Senate Committee on Public Safety noted that, under then-existing interpretations, a court was not required to dismiss any enhancement under Senate Bill No. 81:

> "As made clear by the statutory language enacted by [Senate Bill No.] 81 ('In exercising its discretion under this subdivision . . . .' Pen. Code, § 1385, subd. (c)(2); see also Judicial Council's neutral position letter for [Senate Bill No.] 81 dated Aug. 24, 2021, 'These amendments support the exercise of judicial discretion and also permit a court to consider public safety, as defined, when making its determination.'), as well as the Rules of Court and related Advisory Committee comment, the listed circumstances provided by [Senate Bill No.] 81 do not require the court to dismiss any enhancement. Rather, the court is required to consider the weight of both mitigating and aggravating circumstances and make a determination of whether to dismiss the applicable enhancement or enhancements. While the proof of the presence of one or more specified mitigating circumstances weighs greatly in favor of dismissing the enhancement, endangerment of public safety would outweigh those mitigating circumstances." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 931, as amended June 6, 2022, pp. 8–9.)

Under this analysis, the amendments proposed by Assembly Bill No. 931 would be unnecessary to effectuate the Legislature's stated intent that courts maintain discretion to impose such enhancements. Accordingly, the Legislature's failure to pass Assembly Bill No. 931 is not evidence that the Legislature intended section 1385, subdivision (c)(2)(B) to mandate dismissal of any enhancement.

In sum, neither the plain language of section 1385, nor its legislative history or any subsequent legislation mandated the court to dismiss defendant's prior serious felony enhancement.

## III.   DISMISSAL OF GREAT BODILY INJURY ENHANCEMENT*

In addition to arguing the prior serious felony enhancement must be dismissed, defendant also argues dismissal of the great bodily injury enhancement to count 3 is mandatory pursuant to section 1385, subdivision (c)(2)(B).  He contends this enhancement must be dismissed, even if the prior serious felony conviction also is dismissed, because his prior strike constitutes a sentencing enhancement pursuant to section 1385, subdivision (c)(2)(B), which mandates dismissal of all other enhancements. We reject this argument on several grounds.

First, as explained above, section 1385, subdivision (c)(2)(B) does not mandate the dismissal of any enhancement.  Second, defendant did not seek dismissal of the great bodily injury enhancement below, and the argument is therefore forfeited.  (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [failure to object forfeits "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; see also *People v. Carmony* (2004) 33 Cal.4th 367, 375–376.)  Third, defendant's prior strike conviction does not constitute an enhancement, but rather is part of an alternative sentencing scheme to which section 1385, subdivision (c) does not apply.  (See *People v. Burke* (2023) 89 Cal.App.5th 237, 242–244; accord, *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 526–527.)  Finally, absent evidence to the contrary, we presume the court knew the law and followed it when it declined to strike the great bodily injury enhancement.  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*); *People v. Thomas* (2011) 52 Cal.4th 336, 361 (*Thomas*).)

Defendant has not established the trial court erred or abused its discretion in declining to strike this enhancement.

---

* See footnote, *ante*, page 1.

**IV.** **CONSIDERATION OF FAVORABLE POSTCONVICTION EVIDENCE**[*]

Defendant contends the court abused its discretion and violated his constitutional right to due process by failing to consider his favorable postconviction evidence. We conclude this argument lacks merit.

As stated above, defendant was sentenced in 2016 and, thereafter, completed numerous programs while in prison. He was nearly 62 years old at the time of the resentencing hearing. Evidence of these facts was proffered to the trial court. At the hearing, defense counsel argued defendant's rehabilitative progress was a mitigating factor that warranted striking the prior serious felony conviction. The court invited the prosecutor to respond to this argument, and the prosecutor did so.

The court was not required to expressly address defendant's mitigating evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 1064.) " '[A]bsent an indication that [the court] " 'ignored or overlooked' " [citation] the mitigating evidence, we will not find error . . . .' " (*Ibid.*) "The trial court's mere failure to mention expressly all evidence presented in mitigation . . . does not mean the trial court ignored or overlooked such evidence, but simply indicates that the court did not consider such evidence to have appreciable mitigating weight." (*People v. Samayoa* (1997) 15 Cal.4th 795, 860.) The record here does not indicate the court ignored or overlooked defendant's mitigating evidence. Rather, the record suggests the court found the mitigating evidence did not outweigh defendant's lengthy, recent, and serious criminal history on the question of his dangerousness to public safety.

The court did not abuse its discretion or violate defendant's right to due process in so finding.

---

[*] See footnote, *ante*, page 1.

## V.     APPLICATION OF SECTION 654[*]

Defendant contends remand is required for the sentencing court to expressly exercise its discretion pursuant to Assembly Bill No. 518.  We disagree.

Prior to its amendment by Assembly Bill No. 518, section 654 provided, in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, former subd. (a).)  Assembly Bill No. 518 amended section 654 effective January 1, 2022, to provide, in relevant part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  Thus, a trial court is no longer required to punish a defendant under the offense providing for the longest possible sentence but may punish a defendant under any one of the applicable offenses.  In other words, Assembly Bill No. 518 "provides the trial court new discretion to impose a lower sentence."  (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

At the time of defendant's resentencing hearing, Assembly Bill No. 518 had taken effect and the court had discretion to choose to stay the longer term or terms and impose a lower sentence.  However, defendant did not argue in the trial court that the court should stay the sentence on count 3 and instead punish him pursuant to count 1 or 2.  The court maintained the unstayed sentence on count 3 and imposed and stayed the lower sentences on counts 1 and 2.[12]  Defendant's failure to object to this application of section

---

[*] See footnote, *ante*, page 1.

[12] On count 1, the court imposed the upper term of four years, doubled to eight years due to the prior strike, plus an additional three-year term for the great bodily injury enhancement, for a total stayed term of 11 years.  On count 2, the court imposed the upper term of four years, doubled to eight years due to the prior strike, plus an additional one-year term for the weapon enhancement for a total stayed term of nine years.

24.

654 in the trial court forfeits his argument on appeal. (*People v. Wall* (2017) 3 Cal.5th 1048, 1075; *People v. Scott*, *supra*, 9 Cal.4th at p. 353.)

Even if not forfeited, we conclude remand is not required. Absent evidence to the contrary, we presume the trial court knew and applied the current law. (*Ramirez*, *supra*, 10 Cal.5th at p. 1042; *Thomas*, *supra*, 52 Cal.4th at p. 361.) We therefore presume the court was aware of and applied Assembly Bill No. 518's amendments to section 654 when deciding to stay the sentence on counts 1 and 2, as opposed to count 3.

This presumption may be rebutted where the record affirmatively demonstrates the trial court was unaware of or misunderstood its sentencing discretion. (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1026.) In such cases, remand is required "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Here, the record does not demonstrate the trial court was unaware of its discretion under section 654. Regardless, even if the court was unaware of the scope of its discretion, the record clearly indicates the court would have imposed the same sentence.[13]

The trial court declined to strike defendant's prior serious felony enhancement and imposed an aggregate sentence of 20 years. This sentence reflects the court's determination that a 15-year term would endanger public safety. It is therefore clear the court would not have punished defendant pursuant to count 2 which, when combined with the prior serious felony enhancement, would have resulted in an aggregate term of 14 years. The court's statements regarding defendant's criminal history make it equally

---

[13] In light of this determination, we conclude defendant also has failed to establish constitutionally ineffective assistance of counsel, inasmuch as he cannot show he was prejudiced by counsel's allegedly deficient performance. (See *People v. Woodruff* (2018) 5 Cal.5th 697, 736 [to establish ineffective assistance of counsel, the defendant must show a reasonable probability the outcome would have been different if not for the deficient performance].)

clear the court would not have punished defendant pursuant to count 1 which, when combined with the prior serious felony enhancement, would have resulted in an aggregate term of 16 years.

Accordingly, remand for the court to apply section 654 is not required.

## **DISPOSITION**

The judgment is affirmed.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

SNAUFFER, J.